# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| I.A.T.S.E. LOCAL NO. ONE PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 11893-VCG |
| GENERAL ELECTRIC COMPANY, GENERAL ELECTRIC CAPITAL CORPORATION, GE CAPITAL SUB 3, INC., JEFFREY R. IMMELT, JAMES S. TISCH, DOUGLAS A. WARNER, III, JAMES E. ROHR, JEFFREY S. BORNSTEIN, WILLIAM H. CARY, BRACKETT B. DENNISTON III, RYAN A. ZANIN, ROBERT C. GREEN, KEITH S. SHERIN, ALEXANDER DIMITRIEF, THOMAS C. GENTILE and MARK W. MIDKIFF, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 6, 2016
Date Decided: December 6, 2016

Michael Hanrahan, Paul A. Fioravanti, Jr., Kevin H. Davenport, Samuel L. Closic, of PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; OF COUNSEL: Marc A. Topaz, Lee D. Rudy, Michael C. Wagner, Grant Goodhart, of KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania, *Attorneys for Plaintiff*.

Daniel A. Dreisbach, John D. Hendershot, Andrew J. Peach, John F. Mezzanotte, Jr., of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Greg A. Danilow, Amanda K. Pooler of WEIL, GOTSHAL & MANGES LLP, New York, New York; Christine T. Di Guglielmo, of WEIL, GOTSHAL & MANGES LLP, Wilmington, Delaware, *Attorneys for Defendants*.

GLASSCOCK, Vice Chancellor

This matter involves a question of standing to pursue breach of fiduciary duty claims, arising from a complex merger transaction, in the context of a motion to dismiss. The Plaintiff was a preferred stockholder (and member of a purported class of former preferred stockholders) in a Delaware corporation, General Electric Capital Corporation ("GECC"). As that name indicates, the business of GECC was to provide financial services. The common stock of GECC was owned by its parent, the well-known manufacturing company, General Electric ("GE"). In 2015, GE decided to merge GECC into the parent company. In the resulting series of transactions (referred to collectively as the "Exit Plan"), the Plaintiff's interest in GECC was unilaterally terminated by GE. At the end of the Exit Plan—as described in detail in the body of this Memorandum Opinion—the Plaintiff, who had held a certain number of shares of GECC preferred stock, found itself the owner of a different number of shares of GE preferred stock, with different contractual rights and, it alleges, worth less than the GECC preferred it had owned. In other words, the Plaintiff's interest in GECC was squeezed out in the Exit Plan, and the consideration it received for its GECC stock was, ultimately, GE preferred— different stock in a different entity. The Plaintiff alleges that the price and process whereby GE—which stood on both sides of the transaction—terminated the interests of GECC preferred stockholders was unfair to those stockholders. The Defendants for purposes of this motion do not contest—and I assume without deciding—that

1

Plaintiff's former ownership of preferred stock in GECC entitles it to a review of the transaction under the entire fairness standard, assuming the Plaintiff has standing to invoke such a review.

After the transaction, the GE preferred traded at a price that made the interests received as consideration by former holders of GECC preferred worth less than what had been taken from them. Former GECC preferred stockholders were understandably unhappy, and, eventually, GE allowed them to exchange their new GE preferred for other assets that, presumably, made them whole, in return for the release of potential breach of duty claims (the "Follow-on Exchange Offer"). For reasons of its own, GE decided to extend that exchange right to those who had purchased the new GE preferred after the Exit Plan, as well as former holders of GECC preferred who continued to hold GE preferred. Unfortunately for the Plaintiff, it had sold its new GE preferred shortly after the Exit Plan, and was therefore unable to benefit from the Follow-on Exchange Offer; it now seeks to pursue its cause of action for breach of duty against GE, GECC, GE Capital Sub 3, Inc. ("Sub 3") (a subsidiary used in the transaction at issue), and directors and officers of GE, GECC, and Sub 3.

These Defendants, as stated above, concede for purposes of this motion that the Exit Plan was a transaction for which GECC preferred holders were entitled to entire fairness review, and that the breach of fiduciary duty claims the Plaintiff

asserts here are direct claims. They assert, however, that having sold the new GE preferred, the Plaintiff (and the putative class of similarly-selling stockholders) are without standing. The Defendants conceded at oral argument that, had the consideration the Plaintiff received for its stock been anything other than stock, the Plaintiff could have disposed of that consideration and retained its direct claim for breach of duty. Under the circumstances here, however, the Defendants argue that Plaintiff's cause of action adhered to the GE stock received in consideration, and was sold with that stock; thus the Plaintiff lacks standing. The Defendants point to Vice Chancellor Laster's learned discussion in *In re Activision Blizzard, Inc. Stockholder Litigation*[1] of two types of direct claims stockholders may have against corporate fiduciaries—personal and non-personal—and argue that, as a cause of action "arising out of the relationship between the stockholder and the corporation," Plaintiff's action best fits the non-personal category of claims. Those claims, they point out, adhere to the stock. Therefore, according to the Defendants, these claims then adhere to the shares *into which that stock was converted by the Exit Plan*—that is, the new GE preferred. As a result, Plaintiff's cause of action was transferred to the buyer of that stock, and was released by that buyer in connection with the Follow-on Exchange Offer (or, alternatively, is still attached to that stock). Accordingly, in the view of the Defendants, the Plaintiff lacks standing here.

---

[1] 124 A.3d 1025 (Del. Ch. 2015).

The Defendants raise three issues in this motion to dismiss. Two can be dispensed with in summary form. The first is whether the Plaintiff has stated a claim, as it purports to do, for "quasi appraisal." Quasi appraisal is a remedy, not a cause of action,[2] therefore Count II is dismissed, without prejudice to the Plaintiff's right to seek the remedy of quasi-appraisal, as appropriate. The Defendants also seek to dismiss Count III for failure to state a claim; that count alleges entitlement to damages for purported materially-misleading disclosures in connection with the Exit Plan. Because entire fairness review, if available, will encompass the process of that transaction (including disclosures) in any event, there is little utility to engaging in an analysis of whether the disclosure allegations, standing alone, state a claim: I decline to do so here. That leaves the core issue referred to above: did Plaintiff's breach of duty claim adhere to its GE preferred stock, so that the buyer of that stock, and not the Plaintiff, possesses that cause of action? Or does the Plaintiff possess the claim? Because I find the latter to be the case, the Defendants' motion to dismiss under Rule 12(b)(1) is denied. My rationale follows.

---

[2] *See, e.g.*, *Houseman v. Sagerman*, 2015 WL 7307323, at *4 (Del. Ch. Nov. 19, 2015) ("[Q]uasi-appraisal is not itself a cause of action, but is instead a remedy that, where appropriate, awards stockholders damages based on the going-concern value of their previously owned stock upon a finding of a breach of fiduciary duty, such as the duty to disclose.").

4

# I. BACKGROUND[3]

The following lengthy and tedious recitation is necessary to an understanding of the complex transaction by which GE absorbed GECC.

## A. *The Parties*

The Plaintiff is I.A.T.S.E Local No. One Pension Fund (the "Plaintiff"), which formerly held Series B Preferred Stock of GECC.[4] The Plaintiff is challenging the Exit Plan undertaken by Defendant GE to reorganize its financial services subsidiary, GECC.[5] The Plaintiff brings this action on behalf of itself and a class of all previous holders of Series A, B, and C GECC Preferred Stock (the "GECC Preferred") who received shares of certain GE preferred stock (the "GE Preferred") in the Exit Plan and sold those shares before GE commenced the Follow-on Exchange Offer on December 18, 2015.[6]

Defendant GE is a "New York corporation based in Schenectady, New York and Fairfield, Connecticut."[7] GE's products and services consist of "aircraft engines, power generation, water processing and household appliances to medical imaging, business and consumer financing and industrial products."[8] Defendant

---

[3] The facts, drawn from Plaintiff's Verified Class Action Complaint (the "Complaint") and from documents incorporated by reference therein, are presumed true for purposes of evaluating Defendants' Motion to Dismiss.

[4] Compl. ¶ 1.

[5] *Id.*

[6] *Id.*

[7] *Id.* at ¶ 2.

[8] *Id.*

GECC, incorporated in Delaware, was GE's financial services subsidiary.[9] "GE has, directly and indirectly, owned all of the common stock of GECC since at least the end of 2014."[10] "All the directors of GECC were directors and/or officers of GE."[11] Only one GECC director held any GECC Preferred (or Sub 3 preferred).[12] To raise additional capital in 2012 and 2013, GECC issued three different series of preferred stock—Series A, Series B, and Series C—worth a total of $5 billion.[13]

Defendant Sub 3 was "incorporated in Delaware on June 30, 2015" and was used in the Exit Plan.[14] "All the directors of Sub 3 were directors and/or officers of GE."[15] No Sub 3 director now holds GE Preferred or held GECC Preferred or Sub 3 preferred.[16] Plaintiff's complaint also lists thirteen directors and officers as the remaining Defendants (the "Individual Defendants"), all of whom were directors or officers of GE who served as directors of GECC or Sub 3, or both.[17] GE, GECC, Sub 3, and the Individual Defendants collectively are referred to as "the Defendants" for purposes of this Memorandum Opinion.

---

[9] *Id.* at ¶ 3.
[10] *Id.* at ¶ 20.
[11] *Id.* at ¶ 3.
[12] *Id.*
[13] *See id.* at ¶¶ 22, 26. Series A, B, and C GECC Preferred were issued on June 7, 2012; July 24, 2012; and May 29, 2013, respectively.
[14] *Id.* at 4.
[15] *Id.*
[16] *Id.*
[17] *Id.* at ¶¶ 3–18 (listing Jeffrey R. Immelt, James S. Tisch, Douglas A. Warner III, James E. Rohr, Jeffrey S. Bornstein, William H. Cary, Brackett B. Denniston III, Ryan Zanin, Robert C. Green, Keith S. Sherin, Alexander Dimitrief, Thomas C. Gentile, and Mark W. Midkiff).

*B. The Press Releases*

On April 10, 2015, GE issued a press release (the "April Press Release") announcing the GE Capital Exit Plan.[18] The April Press Release stated that the Exit Plan would be executed in a way that "works for . . . GE . . . GE Capital Corporation debtholders and GE shareholders" and that one element "involves a merger of GECC into GE . . . ."[19] Subsequently, on June 30, 2015, GE formed GE Capital Sub 1 ("Sub 1"), GE Capital Sub 2 ("Sub 2"), and Sub 3, each of which would later be used in the Exit Plan.[20] Five months later, GE followed up with an additional press release on December 1, 2015 (the "December Press Release") announcing the "reorganization of GE Capital."[21] The December Press Release announced that GE would transfer GECC's international operations to a new holding company, GE Capital International Holdings Limited, and likewise would consolidate GECC's U.S. operations under another new holding company, GE Capital US Holdings, Inc.[22] In transactions that would be executed under Delaware law, the December Press Release also stated that the holders of the "three outstanding series of preferred stock issued by GECC . . . will receive on December 3, 2015 preferred stock to be newly issued by GE . . . ."[23] The December Press Release explained that the terms

---

[18] Aff. of Greg A. Danilow, Esq., Ex. 3 (the "April 2015 Press Release").
[19] *Id.* at ¶ 29; April 2015 Press Release.
[20] Compl. ¶ 30.
[21] *Id.* at ¶ 31; Aff. of Greg A. Danilow, Esq., Ex. 1 (the "December 2015 Press Release").
[22] *Id.*
[23] *See* December 2015 Press Release; Compl. ¶ 32.

7

of the new GE preferred stock were "determined in order to provide" the holders of the GECC Preferred with "at least [the] equivalent value" of their existing GECC holdings.[24] Finally, the December Press Release added that "holders of existing GECC preferred stock that continue to hold through December 3, 2015 will be eligible to exercise appraisal rights to the extent set forth in Section 262 of the [Delaware General Corporation Law ("DGCL")]."[25]

*C. The Exit Plan*

The Exit Plan called for a series of mergers that would not be subject to a vote of or consent by the holders of the GECC Preferred.[26] No Special Committee was formed nor were independent legal or financial advisors retained for the transactions.[27] Briefly, the Exit Plan worked as follows: GECC became a subsidiary of a different subsidiary of GE, Sub 3, and the GECC Preferred was converted into Sub 3 preferred stock (the "Sub 3 Preferred"). Next, GECC merged with and into GE in a short-form merger. Sub 3 then merged with another GE subsidiary, Sub 2, and the Sub 3 Preferred was converted into GE Preferred. The details, as set out in the Complaint, are given below.

---

[24] December 2015 Press Release.
[25] *Id.*
[26] *See* Compl. ¶ 32; December 2015 Press Release.
[27] Compl. ¶ 43.

## 1. The Holdco Merger

"First, on December 1, 2015, pursuant to 8 *Del. C.* 251(g), Sub 1 was merged with and into GECC in the Holdco Merger, with GECC surviving. GECC became a subsidiary of Sub 3 and each share of each series of GECC Preferred Stock was automatically converted into one share of a corresponding series of newly issued . . . Preferred Stock of Sub 3. Each series of Sub 3 Preferred purportedly had identical terms to the corresponding series of GECC Preferred Stock. Second, after the Holdco Merger, Sub 3 distributed all of the issued and outstanding common stock of GECC to GE Capital Holdings, and GE Capital Holdings then distributed all of GECC's issued and outstanding common stock to GE."[28]

## 2. The GECC Merger

"Third, on December 2, 2015, GECC merged with and into GE in the short-form GECC Merger pursuant to [Section] 253 of the [DGCL]."[29]

## 3. The Merger

"Fourth, effective at 12:05 a.m. on December 3, 2015, Sub 2 was merged with and into Sub 3 pursuant to [Section] 251 of the DGCL in the Merger, with Sub 3 surviving. Each share of each series of Sub 3 Preferred Stock was automatically converted into shares of a series of GE Preferred Stock. Fifth, a Certificate of

---

[28] *Id.* at ¶ 33.
[29] *Id.*

9

Dissolution was filed with the Delaware Secretary of State at 8:10 a.m. on December 3, 2015, dissolving Sub 3."[30]

*D. The Prospectus Supplement*

On December 1, 2015, GE filed a Prospectus Supplement with the SEC describing the Exit Plan and providing a number of definitions.[31] The Prospectus Supplement defined "Old Preferred Stock" as "each series of preferred stock initially issued by GECC . . . together with the mirror preferred stock newly issued by [Sub 3]."[32] "New Preferred Stock" was defined as "preferred stock to be newly issued by GE."[33] The Prospectus Supplement defined "Old Preferred Holders" as "holders of the Old Preferred Stock issued and outstanding immediately prior to the Effective Date" and stated that these Old Preferred Holders "are eligible to exercise appraisal rights."[34] The appraisal process, as described in the Prospectus Supplement, would allow Old Preferred Holders who follow Section 262 of the DGCL and "do not thereafter withdraw their demand for appraisal . . . or otherwise lose their appraisal rights" the opportunity to have their Old Preferred Stock "appraised by the Delaware Court of Chancery and to receive payment of the 'fair value' of such shares."[35]

---

[30] *Id.*
[31] *See* Aff. of Greg A. Danilow, Esq., Ex. 2 (the "December 2015 Prospectus Supplement") at 2; Compl. ¶ 34.
[32] December 2015 Prospectus Supplement at 2.
[33] *Id.*
[34] *Id.*
[35] *Id.* at S-29.

10

*E. The Follow-on Exchange Offer*

The Exit Plan left the former holders of GECC Preferred with allegedly less valuable GE preferred stock, in part due to lower dividend rates.[36] This resulted in the GE Preferred trading at a price that made the consideration received by the former holders of GECC Preferred less valuable than the market value of their GECC Preferred prior to the Exit Plan.[37] The December Press Release, however, had stated that the GE Preferred Stock's terms were "determined in order to provide" the previous holders of GECC Preferred with "at least equivalent value."[38] Understandably, this left the previous holders of GECC Preferred—now holders of GE Preferred—disgruntled. On December 15, 2015, GE announced the Follow-on Exchange Offer, which offered new GE preferred stock with better terms in exchange for the GE Preferred that was received in the Exit Plan.[39] On December 18, 2015, GE commenced this exchange offer.[40] Unfortunately for the Plaintiff, it had sold its GE Preferred before the Follow-on Exchange Offer was announced.[41]

---

[36] Compl. ¶ 40.

[37] *Id.* at ¶ 42. I note that the GE Preferred was issued to the Old Preferred Holders at more than a one-two basis in consideration for the Old Preferred.

[38] December 2015 Press Release.

[39] Compl. ¶ 46.

[40] *Id.*

[41] *Id.*

11

*F. Procedural History*

The Plaintiff filed its Verified Class Action Complaint (the "Complaint") on January 12, 2016, challenging the Exit Plan. The Complaint pleads three counts. In Count I, the Plaintiff alleges that because GE was a controlling stockholder of GECC and the GE directors and officers were serving as GECC directors and/or Sub 3 directors, those directors were on both sides of the transaction and entire fairness applies.[42] According to the Plaintiff, the forced conversions of GECC Preferred into Sub 3 Preferred and then into GE Preferred were designed to benefit GE at the expense of the stockholders, with the purpose of getting GE out from federal regulatory scrutiny, and were structured to strip the putative class of any meaningful appraisal rights.[43] Count II is the claim for "quasi-appraisal" and Count III alleges materially misleading and incomplete disclosures related to the Exit Plan.

On February 3, 2016, the Defendants moved to dismiss all Counts under Court of Chancery Rule 12(b)(1) for lack of standing (as well as to dismiss Counts II and III for failure to state a claim under Court of Chancery Rule 12(b)(6), which matters I have already resolved above). I heard oral argument on Defendants' Motion to Dismiss on August 23, 2016 during which I requested supplemental briefing from

---

[42] *Id.* at ¶¶ 58–59.
[43] *See id.* at ¶¶ 60–66.

12

the parties.   Having now received the supplemental briefing, this is my Memorandum Opinion.

## II. ANALYSIS

I assume for purposes of this motion that when Plaintiff's GECC Preferred shares were converted, first to Sub 3 Preferred, then to GE Preferred, a claim for breach of fiduciary duty in favor of the Plaintiff and against the Defendants accrued.[44]  The consideration received by the Plaintiff for its GECC shares was a different number of preferred shares in a separate corporate entity with different contractual rights, trading at a different value.  The Plaintiff subsequently sold those shares, but seeks redress for breach of fiduciary duty in regard to the merger nonetheless.  The Defendants raise a discrete issue with regard to Plaintiff's standing here, based on the following syllogism:  Plaintiff's claim arose out of the relationship between Plaintiff, as a stockholder, and GECC; *Activision*[45] teaches that such claims are non-personal, and adhere to the stock; the Plaintiff has sold its stock; the claim transferred to the buyer; thus, the Plaintiff is without standing.  This reasoning is straightforward, but relies on two questionable assumptions.  First, can claims arising from the involuntary removal of Plaintiff's stock really be said to arise from

---

[44] The Defendants, at this stage, do not argue otherwise. *See generally LC Capital Master Fund, Ltd. v. James*, 990 A.2d 435 (Del. Ch. 2010) (discussing the interplay of contract versus equitable rights of preferred stockholders in the merger context).

[45] *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025 (Del. Ch. 2015).

13

the relationship between stockholder and GECC, where the transaction at issue stripped the stock and ended that relationship? And if so, how does the claim adhere to the stock into which the Plaintiff's interest was converted? On these two rocks the Defendants' theory founders.

The Defendants characterize *Activision* as providing that direct claims that arise from the relationship among the stockholder, her stock and the company are non-personal in nature, and adhere to the stock; when that stock is sold, the inherent choses-in-action are therefore transferred to the buying stockholder with the stock.[46] This is in contradistinction to claims arising outside the stockholder/company relationship, as when the stockholder is defrauded by the company—that claim is personal, and does not adhere to the stock, because the stockholder/company relationship there is incidental to, not a part of, the claim.[47] The Defendants point out that the *Activision* distinction generally categorizes fiduciary duty claims as non-personal, and that Plaintiff's claims are fiduciary duty claims; they argue that by extension, the rationale of *Activision* mandates a finding that the Plaintiff's claims accordingly adhered to Plaintiff's stock.[48] However, the *Activision* distinction is both more basic and more nuanced than that.

---

[46] *See* Defs' Opening Br. 16–25.
[47] *See Activision*, 124 A.3d at 1056.
[48] *See* Defs' Opening Br. 16–25.

*Activision* represents a scholarly treatment of existing law, not a creation of new law. It states the unremarkable proposition that claims arising from the relationship among stockholder, stock and the company generally adhere to the stock, and are alienable.[49] The direct fiduciary and statutory claims presented there arose as part of the ongoing relationship between stockholder and company, and *Activision* points out that, by choosing to disassociate himself from the corporation, an ex-stockholder, having sold his shares, has disassociated himself from an interest in causes of action involving the stockholder-corporate relationship; moreover, he is selling into a market that recognizes implicitly the value of the adherent cause of action in the price of the stock.[50] When a stockholder is squeezed out by a merger, however, in a transaction representing a breach of duty, the transaction involved necessarily severs the relationship between stockholder and entity. That is true whether the stock is converted into a right to receive cash or, as here, the right to receive[51] different stock in a different corporation; in either case, there simply is no ongoing relationship between equity-holder and entity, and claims arising from the transaction vest in the former owner of the stock, who has suffered the injury. This is the simple negation of the Defendants' argument; the claim that arose via the non-

---

[49] *See, e.g.*, *In re Sunstates Corp. Stockholder Litig.*, 2001 WL 432447, at *3 (citing 6 *Del. C.* § 8-303 for the proposition that rights inherent in securities transfer with the securities).
[50] *See Activision*, 124 A.3d at 1044, 1058.
[51] According to the Defendants, the stockholders could forgo the conversion of their interests into new stock, and pursue appraisal instead.

15

voluntary termination of the Plaintiff's stock ownership cannot, as a matter of logic or equity, adhere in the stock so taken. "One induced to sell shares as a consequence of a breach of fiduciary duty plainly has a claim separate from the ownership of the shares themselves."[52] Moreover, where the consideration is new stock in a discrete entity, unlike the situation described in *Activision*, it does not appear that the market value of the newly-received stock implicitly would reflect the value of the breach of duty claim, assuming it did adhere to that new stock. Nothing in *Activision*, as I read it, or in logic, suggests that a breach of duty action in a merger can adhere to stock given in consideration for the stockholder interest taken in that merger.

*Activision* itself involved a restructuring that left Activision stockholders with their Activision stock intact, if diluted. In other words, the stock held by the plaintiff in *Activision* was never eliminated, converted, exchanged, or otherwise transmogrified. The plaintiff in *Activision* made "a conscious business decision to sell [its stock, to which its duty claims adhered,]" into a market that "implicitly reflects the value of any prospective lawsuits;" as a result, the Court held that sellers had disassociated themselves from the corporate relationship, and could not join in on a settlement for Activision stockholders related to the restructuring.[53] Here, by contrast, the breach of duty claim arose simultaneously with the sundering of the

---

[52] *In re Sunstates*, 2001 WL 432447, at *3.
[53] *See Activision*, 124 A.3d at 1043–44.

16

relationship between the Plaintiff/stockholder and GECC, and cannot have adhered to the GECC stock, which ceased to exist, or to the Sub 3 Preferred into which it was converted, or to the GE Preferred which served, ultimately, as (theoretically inadequate) consideration for Plaintiff's assets taken in the Exit Plan.

The Defendants concede that the fact that Plaintiff's stock was taken, and converted to stock of a different entity, means that *Activision* is not directly on point. At oral argument, they clarified their position by suggesting that the conversion of the Plaintiff's interest from one security to another to a third, all within the same GE "family," means that I should treat the Plaintiff's continued ownership of stock in GE as part of an ongoing relationship between company and stockholder of the kind referred to in *Activision*, and Plaintiff's subsequent sale of its stock as transferring its cause of action as well. I find this unpersuasive; unlike in *Activision*, the Plaintiff did not continue to hold stock in GECC after the Exit Plan, it held different stock in a different entity. Unlike *Activision*, the Plaintiff did not choose to sell its GECC stock, and nothing in the record indicates that the market into which the Plaintiff sold its new GE Preferred valued the potential breach-of-duty claim in the price of the stock. I find that the Plaintiff's claim did not inhere in the shares sold.

Accordingly, I find that the Plaintiff has standing to seek redress for any injury that arose from the forced conversion of its interest in GECC.

17

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint for lack of standing is DENIED. Defendants' motion to dismiss Count II for failure to state a cause of action is GRANTED. I will consider the disclosure allegations of Count III as part of the entire fairness review, without prejudice to Defendants' ability to revive their motion to dismiss the disclosure claims as a motion for judgment on the pleadings, or otherwise, should the state of the litigation make that appropriate. The parties should provide an appropriate form of order.